IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FOOD & WATER WATCH, | ) | |
| | ) | Civil Action No. 1:17-1485 (ESH) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD J. TRUMP, in his official capacity as | ) | |
| President of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

    I.    Statutory Background ........................................................................................ 2

    II.    Factual and Procedural Background ................................................................. 3

        A.    Presidential Advisory Council on Infrastructure ...................................... 3

        B.    Plaintiff's Complaint .................................................................................. 4

STANDARD OF REVIEW ............................................................................................ 6

ARGUMENT ................................................................................................................. 7

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILS TO ESTABLISH ITS STANDING TO CHALLENGE AN ALLEGED INFRASTRUCTURE ADVISORY COUNCIL ............................... 7

        A.    Plaintiff Fails to Satisfy the Requirements of Organizational Standing .... 7

        B.    Plaintiff Cannot Rely on Speculative Assertions of Procedural Injury Under FACA to Establish Standing ......................................................... 9

        C.    Plaintiff Also Cannot Establish Standing for Its Claims Seeking Disclosure of Records Based on a Speculative Informational Injury ...... 13

    II.    PLAINTIFF'S CLAIMS ARE UNRIPE ............................................................ 14

    III.    PLAINTIFF'S CLAIMS ARE MOOT BECAUSE THE PRESIDENT HAS DECIDED NOT TO ESTABLISH AN INFRASTRUCTURE COUNCIL ........ 15

    IV.    PLAINTIFF FAILS TO ESTABLISH THE COURT'S JURISDICTION OVER ITS MANDAMUS ACT CLAIMS AGAINST THE PRESIDENT ................... 18

    V.    PLAINTIFF FAILS TO IDENTIFY A FINAL AGENCY ACTION THAT COULD GIVE RISE TO ITS APA CLAIMS ..................................................... 21

    VI.    PLAINTIFF'S CLAIM UNDER THE DJA MUST ALSO BE DISMISSED .... 23

CONCLUSION ............................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227 (1937) .................................. 23

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................................. 7, 11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898 (D.C. Cir. 1993) .............. 12

*Atkins v. Fischer,* 232 F.R.D. 116, (D.D.C. 2005) ...................................................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 7, 11

*Bennett v. Spear,* 520 U.S. 154 (1997) ................................................................. 22

*Bois v. Marsh*, 801 F.2d 462 (D.C. Cir. 1986) ......................................................... 18

*Byrd v. EPA*, 174 F.3d 239 (1999)....................................................................... 16

*C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.,* 310 F.3d 197 (D.C. Cir. 2002) ....... 23

*Citizens for Responsibility & Ethics in Wash. v. Duncan,*
    643 F. Supp. 2d 43 (D.D.C. 2009) ................................................................ 15

*Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51 (D.D.C. 2012) ......... 17

*Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) (en banc) ....................................... 17, 18

*Conyers v. Reagan*, 765 F.2d 1124 (D.C. Cir. 1985) ................................................... 18

*\*Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213 (D.D.C. 2017) .................... 15, 16

*Ctr. for Law & Educ. v. Dep't of Educ.,* 396 F.3d 1152 (D.C. Cir. 2005) ................................. 8

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009) ........................ 18

*Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85 (D.D.C. 2016) ...................... 18

*Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136 (D.C. Cir. 2011) ................................ 8

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) (en banc) ....................................... 9

*Food & Water Watch v. U.S. EPA*, 5 F. Supp. 3d 62 (D.D.C. 2013) ......................................... 21

*\*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) .................................. 8, 9

*Franklin v. Massachusetts*, 505 U.S. 788 (1992) ........................................................ 18

*\*Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28 (D.D.C. 2011) ........................... 12, 18, 19

*Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d 169 (D.D.C. 2012) ......................... 15

*Friends of Animals v. Jewell*, 828 F.3d 989 (D.C. Cir. 2016) ................................. 13, 14

*Friends of Keeseville, Inc. v. FERC,* 859 F.2d 230 (D.C. Cir. 1988) ........................... 15

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9 (D.D.C. 2001) ..... 6

*Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192 (D.C. Cir. 1992) .............................. 7

*Hewitt v. Helms*, 482 U.S. 755 (1987) ...................................................... 16

*Humane Soc'y v. Vilsack*, 797 F.3d 4 (D.C. Cir. 2015) ...................................... 7

*\*In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) ....................................... 3, 12, 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................. 6

*La Jolla Friends of the Seals v. NOAA*, 630 F. Supp. 2d 1222 (S.D. Cal. 2009) ....................... 21

*LaRouche v. Fowler*, 152 F.3d 974 (D.C. Cir.1998) .................................... 18

*Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) .................................... 16

*Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. CV 17-1354, 2017 WL 3028832 (D.D.C. July 18, 2017) .......... 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................... 8

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52 (D.C. Cir. 2001) ............................ 15

*Metcalf v. Nat'l Petroleum Council,* 553 F.2d 176 (D.C. Cir. 1977) ......................... 10

*Nader v. Baroody*, 396 F. Supp. 1231 (D.D.C. 1975) ................................. 12

*NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 674 F.3d 869 (D.C. Cir. 2012) .................... 16

*Norton v. SUWA*, 542 U.S. 55 (2004) ...................................................... 21

*\*PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087 (D.C. Cir. 2015)................................ 7, 8

*Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989) ................................................................. 2

*Rhodes v. Stewart*, 488 U.S. 1 (1988) ................................................................................... 16

\*R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.,
   810 F.3d 827 (D.C. Cir. 2016) .................................................. 8, 9, 10, 13, 14, 15

*Schilling v. Rogers,* 363 U.S. 666 (1960) .................................................................................... 23

*Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*,
   502 F. Supp. 2d 50 (D.D.C. 2007) .................................................................................... 23

*Shibeshi v. United States*, 920 F. Supp. 2d 105 (D.D.C. 2013) ..................................................... 6

*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667 (1950) ....................................................... 23

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C. Cir. 2000) ............................................... 6

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ..................................................................... 9

*Superior Fibre Prod., Inc. v. U.S. Dep't of the Treasury*, 156 F. Supp. 3d 54 (D.D.C. 2016) .... 23

*Texas v. United States*, 523 U.S. 296 (1998) ............................................................................... 14

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) .................................................. 6

*United States v. W.T. Grant & Co.*, 345 U.S. 629 (1953) ............................................................. 18

*Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1 (D.D.C. 2001) ........................................ 17

## **Statutes**

5 U.S.C. § 551 ........................................................................................................................ 21, 22

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ....................................................... 1

5 U.S.C. § 704 ........................................................................................................................ 21, 22

5 U.S.C. § 706 ............................................................................................................................. 21

Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 §§ 1–15 .................................... 1, 2

5 U.S.C. app. 2 § 2 ...................................................................................................................... 2

5 U.S.C. app. 2 § 3 ............................................................................................ 2, 3, 5

5 U.S.C. app. 2 § 5 ............................................................................................ 3, 5, 20

5 U.S.C. app. 2 § 9 ............................................................................................ 3, 14, 19

5 U.S.C. app. 2 § 10 ...................................................................................... 3, 5, 14, 16, 20

5 U.S.C. app. 2 § 11 ................................................................................................... 3

Mandamus Act, 28 U.S.C. § 1361 ................................................................. 1, 5, 18, 19

Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202 ...................................... 1

## Regulations

41 C.F.R. § 102-3.40 ............................................................................................... 12

## Executive Orders

E.O. 13805 § 2, 82 Fed. Reg. 34383 (July 19, 2017) .................................3-4, 14-15, 18, 20, 22

E.O. 13811 § 3, 82 Fed. Reg. 46363 (Sept. 29, 2017) ...................................... 4, 14, 21

## **INTRODUCTION**

Plaintiff in this case alleges that Defendants the President and the U.S. Departments of Commerce and Transportation ("Defendants") have failed to comply with the requirements of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 §§ 1–15, in connection with an alleged infrastructure advisory council that, Plaintiff asserts, was formed by the President soon after he took office. Plaintiff asserts claims against the President under the Mandamus Act, 28 U.S.C. § 1361; against the U.S. Departments of Commerce and Transportation (collectively, the "Departments") under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; and against all Defendants under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.

All of Plaintiff's claims must be dismissed because, although the President had planned to create an infrastructure advisory council, the process of establishing such a council was never completed. The President issued an Executive Order on July 19, 2107, authorizing the establishment of an infrastructure advisory council, but no charter was ever filed. Instead, less than a month later, on August 17, 2017, the White House announced the President's decision not to move forward with such a council after all, and on September 29, 2017, the President revoked the Executive Order.

Plaintiff's Complaint offers nothing but conclusory assertions and speculation regarding the existence of such a council and thus fails to plausibly allege that any such infrastructure advisory council ever met or operated as a council. Plaintiff therefore fails to identify a cognizable injury sufficient to support standing, and its claims are unripe. Moreover, even if the Court had jurisdiction to consider Plaintiff's claims at the time Plaintiff filed its Complaint, those claims are now moot in light of the President's decision not to move forward with an infrastructure advisory council. That decision had nothing to do with this case but instead reflects

the President's conclusion that such groups had become too politicized and follows on his decisions, in the same period, to end two other initiatives. Plaintiff's claims therefore should be dismissed for lack of subject matter jurisdiction.

The Court also lacks jurisdiction over Plaintiff's Mandamus Act claims against the President because Plaintiff has failed to identify a clear and indisputable right to relief, as would be necessary to invoke this drastic and extraordinary remedy. Plaintiff's APA claims against the Departments are also barred because it has not identified a final agency action as the object of its challenge. Finally, because Plaintiff's other claims are subject to dismissal, its DJA claim, which merely allows for an additional form of relief where a right of action already exists, must also be dismissed.

## **BACKGROUND**

### I.     **Statutory Background**

FACA, 5 U.S.C. app. 2 §§ 1–15, imposes a variety of requirements on "advisory committees," which are defined to include "any committee . . . which is . . . established or utilized by the President, or . . . by one or more agencies, in the interest of obtaining advice or recommendations." 5 U.S.C. app. 2 § 3(2). The definition excludes committees comprised wholly of Federal Government employees. *Id.* The purpose of FACA, enacted in 1972, "was to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature." *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 445–46 (1989) (quoting 5 U.S.C. app. 2 § 2(a)) (citation omitted).

FACA places limits on the creation and operation of bodies that fall within the Act's definition of "advisory committee." 5 U.S.C. app. 2 § 3(2). Before an advisory committee "meet[s] or take[s] any action," an advisory committee charter must be filed. *Id.* § 9(c). In addition, advisory committees must announce their upcoming meetings in the Federal Register; hold their meetings in public; allow interested persons to attend; keep detailed minutes of each meeting; and publicly disclose certain documents. *Id.* §§ 10(a)-(c), 11. An advisory committee must also "be fairly balanced in terms of the points of view represented" and may "not be inappropriately influenced by the appointing authority or by any special interest." *Id.* § 5(b)(2), (3) & (c); *see also In re Cheney*, 406 F.3d 723, 727 (D.C. Cir. 2005).

## II.     Factual and Procedural Background

### A.     Presidential Advisory Council on Infrastructure

At the time he took office in January 2017, the President was interested in establiing a new infrastructure advisory council. Declaration of Reed S. Cordish ("Cordish Decl.") ¶ 4, attached hereto. Over the next six months, White House staff and others engaged in some preliminary discussions regarding how such an advisory council would operate and what its mission would be. *Id.* ¶ 5. As a result of these discussions, the President issued an Executive Order on July 19, 2017, authorizing the establishment of a Presidential Advisory Council on Infrastructure in the Department of Commerce. E.O. 13805 § 2, 82 Fed. Reg. 34383 (July 19, 2017); *see* Cordish Decl. ¶ 7.

Pursuant to Executive Order 13805, the Council would have no more than fifteen members representing various infrastructure interests. E.O. 13805 § 3. The Executive Order further states that the Secretary of Commerce "shall, within 60 days of [July 19, 2017], submit questions to the Council for consideration in its work and report." *Id.* § 5(b). Ultimately, the Council was to submit to the President "a report containing its findings and recommendations"

on certain infrastructure-related topics identified in the Executive Order. *Id.* §§ 4, 6. The Council

would terminate "on December 31, 2018, unless extended by the President before that date, or

within 60 days after submitting its report . . ., whichever occurs first." *Id.* § 7. The Executive

Order further provided that, "[i]nsofar as [FACA] may apply to the Council, any functions of the

President under [FACA], except for those in section 6 and section 14 of that Act, shall be

performed by the Secretary of Commerce." *Id.* § 5(d).

      Although the Executive Order formally authorized the establishment of the Council, it

was anticipated that a charter, describing the Council's operation in greater detail, would be

executed and filed before any members were appointed to the Council and before the Council

began to operate. Cordish Decl. ¶ 6. The process of drafting a charter began in April 2017. *Id*.

However, before any such charter had been finalized, the President decided not to proceed with

an infrastructure advisory council based on his conclusion that such entities had become too

politicized. *Id.* ¶ 8. On August 17, 2017, after the President had ended two other initiatives, the

White House announced that the Council would not move forward. *Id.* No members were ever

appointed to the infrastructure advisory council that the President had anticipated, nor was a

charter ever filed. *Id.*; Declaration of James W. Uthmeier ("Uthmeier Decl.") ¶ 8, attached

hereto. The Department of Commerce therefore never carried out any of its obligations under

Executive Order 13805. Uthmeier Decl. ¶¶ 8-9.

      On September 29, 2017, the President signed Executive Order 13811, which revoked

Executive Order 13805. *See* E.O. 13811 § 3, 82 Fed. Reg. 46363 (Sept. 29, 2017).

### B.    Plaintiff's Complaint

      Plaintiff filed suit on July 25, 2017, less than a week after the President issued Executive

Order 13805. In its complaint, Plaintiff claims that "[i]n January 2017, President Trump

established an Infrastructure Council" to "advise himself, DOT, and Commerce on matters

related to infrastructure policy." Compl. ¶ 3. According to Plaintiff, this "Infrastructure Council is headed by" two private businessmen, Richard LeFrak and Steven Roth. *Id.* ¶ 29. Although Plaintiff does not identify any meeting held by the alleged Council, any advice or recommendation that it has provided, or any action that was taken based on such advice or recommendation, Plaintiff alleges that, "[u]pon information and belief, the Infrastructure Council has met on numerous occasions since January 20, 2017 to provide advice and recommendations on infrastructure policy to Defendants." *Id.* ¶ 32. Plaintiff further claims that Executive Order 13805, which the President issued on July 19, 2017, either "recognizes the extant Infrastructure Council or is meant to create a successor council." *Id.* ¶ 6.

Plaintiff asserts that the alleged "Infrastructure Council" that it describes has been operating in violation of FACA because no charter has been filed. Compl. ¶¶ 56, 62. Plaintiff also claims that the membership of this alleged council is not fairly balanced and that it has convened meetings without publishing notice, keeping detailed minutes, or making documents available, in violation of FACA, 5 U.S.C. app. 2 §§ 5, 10. Compl. ¶¶ 65-68, 71-73. Plaintiff brings claims against the President under the Mandamus Act, 28 U.S.C. § 1361. Compl. §§ 52-57, 64-69 (Counts One and Three). Plaintiff also brings claims against the Departments of Transportation and Commerce under the APA, 5 U.S.C. § 706. Compl. §§ 58-63, 70-74 (Counts Two and Four). Plaintiff also seeks a declaration under the DJA, 28 U.S.C. §§ 2201-2202, that the Presidential Advisory Council on Infrastructure is an advisory committee as defined by FACA, 5 U.S.C. app. 2 § 3(2). Compl. ¶¶ 75-80 (Count Five). Plaintiff asks the Court for declaratory and injunctive relief, including the production of "all records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents that were made available to or prepared for or by the Infrastructure Council," and to vacate any (unspecified)

actions taken in violation of FACA. *Id.* at 20-21.

Despite the White House's August 17 announcement that the plans to establish a Presidential Advisory Council on Infrastructure would not go forward, and the September 29 revocation of Executive Order 13805, Plaintiff has not withdrawn or amended its Complaint.

## STANDARD OF REVIEW

Defendants move to dismiss this case for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A plaintiff's claims of jurisdiction should be closely scrutinized because a court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). "Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).

In evaluating a motion to dismiss, "the Court must 'treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Shibeshi v. United States*, 920 F. Supp. 2d 105, 106 (D.D.C. 2013) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint." *Id.* (quoting *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does

a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (alterations in original).

Further, when evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court may look to matters outside the complaint. *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992) ("[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILS TO ESTABLISH ITS STANDING TO CHALLENGE AN ALLEGED INFRASTRUCTURE ADVISORY COUNCIL

#### A. Plaintiff Fails to Satisfy the Requirements of Organizational Standing

This case should be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiff lacks standing to assert its claims of alleged FACA violations under either the Mandamus Act or the APA. First, Plaintiff fails to meet the requirements for organizational standing. "As an organization, [Plaintiff] can assert standing on its own behalf, on behalf of its members or both." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (internal quotation omitted). Here, Plaintiff appears to assert standing only on its own behalf. *See* Compl. ¶¶ 7-14. Plaintiff therefore "must state a plausible claim that [1] [it] has suffered an injury in fact [2] fairly traceable to the actions of the defendant [3] that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015). The D.C. Circuit has explained that an organizational plaintiff may satisfy the first prong of standing—the injury-in-fact requirement—only if it identifies a "concrete and demonstrable injury to its activities," rather than "merely a setback to its abstract social

interests." *PETA*, 707 F.3d at 1094 (internal quotation omitted). In order to determine whether an organization has met this burden, a court evaluates not only whether the organization has identified an injury to its interests but also "whether the organization 'used its resources to counteract that harm.'" *Id.* (quoting *Equal Rights Ctr. v. Post Properties, Inc*., 633 F.3d 1136, 1140 (D.C. Cir. 2011)). In addition, as with any plaintiff, the asserted injury must be "actual or imminent, not conjectural or hypothetical." *R.J. Reynolds Tobacco Co. v. U.S. Food & Drug Admin.,* 810 F.3d 827, 829 (D.C. Cir. 2016) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

Plaintiff fails to identify a concrete and demonstrable injury to its activities. Plaintiff asserts an interest in "infrastructure, particularly projects related to water resources." Compl. ¶ 8. According to Plaintiff, it has lobbied in favor of certain legislation that would "increase federal funding for U.S. water infrastructure modernization," and it has criticized the possibility of privatizing water infrastructure. *Id.* ¶¶ 9-10. However, Plaintiff fails to assert that it has expended any resources to combat any harm to its activities, and the D.C. Circuit has found an organization's asserted interest in lobbying insufficient for standing purposes. *Ctr. for Law & Educ. v. Dep't of Educ.,* 396 F.3d 1152, 1161 (D.C. Cir. 2005); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (holding Plaintiff lacked standing in that case under D.C. Circuit precedent that "ma[de] clear that an organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury"). Moreover, while Executive Order 13805 identifies "ports and waterways" and "water resources" among the many sectors that the anticipated infrastructure advisory council would study, Plaintiff fails to plausibly assert that its alleged Infrastructure Council has issued any advice or recommendations on infrastructure projects in either of those sectors, nor

that Plaintiff's "organizational activities have been perceptibly impaired in any way" as a result

of such advice or recommendations. *See Food & Water Watch, Inc.*, 808 F.3d at 921. Plaintiff

therefore has not satisfied the injury-in-fact requirements specific to organizational standing, and

its claims should be dismissed for that reason alone.

B.    **Plaintiff Cannot Rely on Speculative Assertions of Procedural Injury Under
       FACA to Establish Standing**

Rather than showing a concrete and demonstrable harm to its activities, Plaintiff appears

to rely solely on alleged procedural injuries under FACA, asserting its interest in ensuring that

the alleged Infrastructure Council "represents the viewpoints of those who are skeptical of the

privatization of infrastructure," as well as its "statutory right[s]" to participate in Infrastructure

Council meetings and review Council documents and meeting minutes. Compl. ¶¶ 12-14.

However, as the D.C. Circuit has recognized, a plaintiff asserting a procedural injury under

FACA "must still demonstrate 'a distinct risk to a particularized interest.'" *R.J. Reynolds*

*Tobacco Co.*, 810 F.3d at 829 (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C.

Cir. 1996) (en banc)); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)

("deprivation of a procedural right without some concrete interest that is affected by the

deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.").

Plaintiff's asserted procedural injuries are insufficient to establish standing, particularly where its

assertions regarding an alleged Infrastructure Council are themselves vague and speculative.

In *R.J. Reynolds*, the D.C. Circuit held that the plaintiff lacked standing to challenge the

composition of an advisory committee because it had failed to identify a risk of imminent injury

sufficient to support standing. *R.J. Reynolds Tobacco Co.*, 810 F.3d. at 832. In that case, the

advisory committee had submitted a report to the Food and Drug Administration ("FDA"), but

the FDA had not yet issued a final rule based on that report. *Id.* at 830. As the D.C. Circuit

9

explained, the procedural FACA violation that the plaintiff alleged "by no means rendered the risk of eventual adverse FDA action substantially probable or imminent." *Id.* Indeed, because "[i]t remains unclear whether the FDA will issue a final rule, and what it would say," the court concluded that "the extent to which the FDA would be persuaded by the content of the Committee's report" during any such rulemaking "is quite speculative." *Id.* The court thus held that the plaintiff's alleged injuries were "too remote and uncertain, or, to put the same thing another way, insufficiently imminent," to satisfy the Article III requirements of standing. *Id.* at 829; *see also Metcalf v. Nat'l Petroleum Council,* 553 F.2d 176, 184, 188 (D.C. Cir. 1977) (holding plaintiff lacked standing to challenge the composition of an advisory committee where, among other things, there was "no allegation that [the agency] took action based on" a committee recommendation).

Plaintiff's assertions in this case are even more speculative than those in *R.J. Reynolds* or *Metcalf*. Plaintiff fails to identify not only any agency action based on the advice or recommendation of the "Infrastructure Council" that it posits, but also any plausible basis to conclude that any such "Infrastructure Council" existed in the first place, much less that it provided any advice or recommendation as a council, or that Defendants took any action based on any such advice or recommendation. Although the President's Executive Order stated that the planned Presidential Advisory Council on Infrastructure would at some point issue a report, Plaintiff does not assert that any such report has been issued, nor does it allege that such a report was considered by the President, by the Department of Transportation, or by the Department of Commerce in connection with any particular decision or final agency action. To the contrary, Plaintiff's description of the President's infrastructure plans and of infrastructure-related decisions made by Defendants omit any suggestion that non-federal actors, such as an

infrastructure advisory council or any members thereof, were involved in making those plans or decisions. *See, e.g.*, Compl. ¶¶ 21 (asserting that "Defendants have been soliciting proposals to include in the [President's] Infrastructure Plan"); 24 ("Defendants have already made important decisions regarding infrastructure.").

Plaintiff does make conclusory assertions that the alleged "Infrastructure Council" had a membership and held meetings, but its allegations are too speculative to meet the plausibility standard of *Iqbal/Twombly*. *Iqbal*, 556 U.S. at 678 (rejecting "'naked assertion[s]' devoid of 'further factual enhancement'" as insufficient). For instance, the Complaint alleges that "[u]pon information and belief, the Infrastructure Council has met on numerous occasions since January 20, 2017 to provide advice and recommendations on infrastructure policy to Defendants." Compl. ¶ 32. In support of this statement, Plaintiff cites two newspaper articles that, according to Plaintiff, report on a meeting between the President and LeFrak, and another meeting between the President and LeFrak and Roth, about infrastructure issues. *Id.* n.27. As an initial matter, statements in newspaper articles generally "constitute inadmissible hearsay," *Atkins v. Fischer*, 232 F.R.D. 116, 132 (D.D.C. 2005), and thus are of questionable value in establishing the plausibility of a plaintiff's assertions.

But more fundamentally, the articles show no more than, at most, the President receiving input from various individuals about infrastructure issues, not advice or recommendations of an infrastructure advisory council, nor any meetings of such a council. The *New York Times* article, which Plaintiff says describes "a meeting between President Trump and LeFrak about the construction of the border wall," Compl. ¶ 32 n.27, actually describes a "conversation," not a "meeting," between the President and LeFrak at the Mar-a-Lago resort, where the two reportedly talked about the price the Department of Homeland Security was quoting for the proposed border

wall with Mexico. The *Reuters* article does describe a meeting between the President, private

parties, and federal officials, but does not suggest it was a meeting of any infrastructure advisory

council. To the contrary, the article explains that "LeFrak and Roth have been tapped to lead an

infrastructure council that Trump *plans* to create." (emphasis added).

Plaintiff's allegations of discussions between the President and private individuals about

infrastructure are insufficient to allege the establishment of a federal advisory committee. In

order for FACA to apply, the Government must receive group, as opposed to individual, advice.

41 C.F.R. § 102-3.40(e) (group of individuals "assembled to provide individual advice" is not a

committee subject to FACA); *see also In re Cheney*, 406 F.3d at 730–31 (holding task force sub-

groups were not FACA committees in part because their meetings with individuals who were not

federal employees did not "involve deliberations or any effort to achieve consensus on advice or

recommendations" but merely "collect[ed] individual views"); *Freedom Watch, Inc. v. Obama*,

807 F. Supp. 2d 28, 34 (D.D.C. 2011) (citing *Ass'n of Am. Physicians & Surgeons, Inc. v.

Clinton*, 997 F.2d 898, 913-14 (D.C. Cir. 1993), which held that, when members of a group

composed of federal officials held forums with non-federal stakeholders to gather information,

the meetings did not violate FACA because no effort was made to reach a consensus or bring a

collective judgment to bear); *Nader v. Baroody*, 396 F. Supp. 1231, 1234 (D.D.C. 1975)

(meetings between an Assistant to the President and various executive branch officials and

special interest groups, held for the purpose of exchanging views, did not constitute an advisory

committee under FACA; alleged committees "were not formally organized and there is little or

12

no continuity"). Plaintiff's allegations therefore fail to plausibly establish even a procedural

injury, and they fall far short of demonstrating an injury-in-fact under *R.J. Reynolds*. [1]

### C.     Plaintiff Also Cannot Establish Standing for Its Claims Seeking Disclosure of Records Based on a Speculative Informational Injury

Given the speculative nature of Plaintiff's assertions, Plaintiff also fails to establish

informational standing with respect to FACA's disclosure requirements. In order to establish

informational standing, a plaintiff must show that "(1) it has been deprived of information that,

on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it

suffers, by being denied access to that information, the type of harm Congress sought to prevent

by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). But

although a court must "assum[e] [the plaintiff's] view of the law wins the day" for purposes of

this inquiry, *Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on

Election Integrity*, No. CV 17-1354, 2017 WL 3028832, at *6 (D.D.C. July 18, 2017), the

plausibility requirements of *Twombly* and *Iqbal* continue to apply to a plaintiff's factual

allegations.

Given the lack of any plausible factual allegations that an infrastructure advisory council

ever met or operated, this case resembles *Friends of Animals*, where the D.C. Circuit held that

the plaintiff lacked informational standing because, under the statutory framework at issue there,

no disclosure obligation was then in effect; rather, the prerequisite step under the Endangered

Species Act that would trigger such an obligation—the determination that a species would be

---

[1] Although the Court need not reach the issue, Plaintiff also fails to satisfy the second and third prongs of standing for similar reasons. Any injury that Plaintiff might identify cannot be deemed fairly traceable to an alleged infrastructure advisory council when the questions of whether the alleged council ever existed, as well as whether it provided any advice or recommendations, are matters of pure speculation on Plaintiff's part, nor is such an injury redressable through injunctive or declaratory relief.

listed as endangered—had not yet occurred. *Friends of Animals*, 828 F.3d at 993. Similarly here, there is no plausible allegation that the equivalent prerequisite steps under FACA have occurred. FACA does not impose any disclosure requirements on advisory committees until they come into existence, plan and hold a meeting, or provide advice or recommendations, *see* 5 U.S.C. app. 2 §§ 9(c) (identifying the filing of a charter as a prerequisite to an advisory committee "meet[ing] or tak[ing] any action"), 10 (setting forth procedures for advisory committee meetings). Yet Plaintiff fails to plausibly allege that any of these events have taken place. Plaintiff thus fails to establish an actual informational injury of sufficient imminence to support standing at the pleading stage. The Court should thus dismiss all of Plaintiff's claims for lack of standing.

## II.      PLAINTIFF'S CLAIMS ARE UNRIPE

The speculative nature of Plaintiff's asserted injuries also merits dismissal on the ground that its claims are unripe. Standing and ripeness are related insofar as "[b]oth doctrines address the imminence issue, using the same focus on contingencies that may render the risk of harm too slight." *R.J. Reynolds Tobacco Co.*, 810 F.3d at 830. A claim is not ripe for adjudication "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). As described above, Plaintiff's claim here is doubly, if not triply, speculative: First, Plaintiff speculates about the existence of an "Infrastructure Council" in the first place, and about this alleged council's alleged meetings and alleged advice and recommendations produced during those meetings; and second, Plaintiff speculates about the future actions that the President or the Departments of Transportation or Commerce might, or might not, take based on that advice or those recommendations. Meanwhile, the President has decided not to move forward with the alleged council and has revoked the Executive Order authorizing its establishment, *see* E.O. 13811 § 3 (revoking E.O.

13805), making this speculation especially dubious. *See R.J. Reynolds Tobacco Co.*, 810 F.3d at

830-31 ("Ripeness concerns underscore this point: part of the reason the injury is too remote is

that, if the [agency] chooses not to issue a rule, this case 'may not require adjudication at all.'"

(quoting *Friends of Keeseville, Inc. v. FERC,* 859 F.2d 230, 235 (D.C. Cir. 1988))). For the same

reasons that Plaintiff fails to assert a plausible injury for standing purposes, Plaintiff's claims

also are not ripe for review.

## III.   PLAINTIFF'S CLAIMS ARE MOOT BECAUSE THE PRESIDENT HAS DECIDED NOT TO ESTABLISH AN INFRASTRUCTURE COUNCIL

Not only are Plaintiff's asserted injuries too speculative to support standing or ripeness,

but the President's decisions not to move forward with the establishment of a Presidential

Advisory Council on Infrastructure, and to revoke the Executive Order authorizing its

establishment, also render Plaintiff's claims moot. Cases are moot when "events outrun the

controversy such that the court can grant no meaningful relief." *McBryde v. Comm. to Review*

*Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 55

(D.C. Cir. 2001). Claims that an advisory committee is operating in violation of FACA become

moot when the advisory committee ceases to exist, or exists or operates differently than it had in

the past. *See Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 223 (D.D.C. 2017)

("courts in the D.C. Circuit have routinely held that claims based on FACA's . . . procedural

requirements [other than the document disclosure provision of § 10(b)] are mooted when the

relevant advisory committee ceases to exist"); *Freedom Watch, Inc. v. Obama*, 859 F. Supp. 2d

169, 174 (D.D.C. 2012) (holding FACA claims moot "[b]ecause there are no grounds to find that

the alleged committee, even if it did at some point exist exists at present"); *Citizens for*

*Responsibility & Ethics in Washington v. Duncan*, 643 F. Supp. 2d 43, 51 (D.D.C. 2009)

(dismissing FACA case as moot because the convening of a new panel in compliance with

FACA "eliminate[s] the need for this Court to grant declaratory and injunctive relief").

Here, the Court cannot grant meaningful relief with respect to Plaintiff's claims for injunctive relief because there is no infrastructure advisory council that can be ordered to comply with FACA. And although Plaintiff also seeks declaratory relief, a request for declaratory relief is similarly moot when there is no ongoing case or controversy: "Where an intervening event renders the underlying case moot, a declaratory judgment can no longer 'affect[ ] the behavior of the defendant towards the plaintiff,' and thus 'afford[s] the plaintiffs no relief whatsoever.'" *NBC-USA Housing, Inc., Twenty-Six v. Donovan*, 674 F.3d 869, 873 (D.C. Cir. 2012) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) and *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)); *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) ("any injunction or order declaring [the challenged practice] illegal would accomplish nothing—amounting to exactly the type of advisory opinion Article III prohibits.").

This court has recognized that, where the plaintiff's FACA claim seeks to compel the provision of documents that were made available to or prepared for or by an advisory council, as required under 5 U.S.C. app. 2 § 10(b), such a claim may survive the dissolution of the advisory council. *Ctr. for Biological Diversity*, 239 F. Supp. 3d at 228-29. In *Ctr. for Biological Diversity*, however, a strategy team for spotted owl conservation had been in existence and had held meetings, so the obligations of § 10(b) indisputably had been triggered if FACA were held to apply. *See id.* at 228; *see also Byrd v. EPA*, 174 F.3d 239, 244 (1999) (FACA § 10(b) claim for declaratory relief not moot where a peer review panel had provided documents but only significantly after disclosure would have been required under FACA).

Here, on the other hand, the President decided not to move forward with an infrastructure advisory council while the process of preparing a charter for the council was still underway.

Cordish Decl. ¶ 8; Uthmeier Decl. ¶ 8. While Plaintiff asserts that an Infrastructure Council existed even before the Executive Order 13805 was issued, and that it held meetings, those assertions amount to nothing more than speculation, as explained above. Thus, Plaintiff can point to no obligations that arose under § 10(b) as surviving the President's decision not to move forward with the council. Plaintiff's claims to compel documents pursuant to § 10(b) therefore are moot for the same reasons that its other claims are moot.

Further, no exception to mootness is applicable here. The "voluntary cessation" exception to mootness "does not apply when the challenged activity stops for reasons unrelated to litigation." *Wyo. Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 8 n. 1 (D.D.C. 2001). Moreover, as the D.C. Circuit has recognized, the government is entitled to particular deference in connection with this exception. "At least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose." *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc) (challenge to federal statute mooted by expiration of statute); *Citizens for Responsibility & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 61, 62 (D.D.C. 2012) ("[W]here the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior.").

The circumstances here do not support the application of the voluntary cessation exception. The President's decision not to move forward with an infrastructure advisory council was a result of his view that such councils had become too politicized, and coincided with his similar decisions to end other initiatives that were already in existence. Cordish Decl. ¶ 8. The decision therefore had nothing to do with this pending action, nor is there any reason to think that

the President would change his mind about moving forward with the council if this case were dismissed. In short, because this is a case in which "there is no reasonable expectation that the [alleged] wrong will be repeated," *United States v. W.T. Grant & Co.*, 345 U.S. 629, 632-33 (1953), Plaintiff's request for declaratory and injunctive relief related to Defendants' alleged non-compliance with FACA should be dismissed as moot.[2]

## IV.   PLAINTIFF FAILS TO ESTABLISH THE COURT'S JURISDICTION OVER ITS MANDAMUS ACT CLAIMS AGAINST THE PRESIDENT

Plaintiff's claims against the President (Counts One and Three) should also be dismissed because Plaintiff fails to establish jurisdiction under the Mandamus Act, 28 U.S.C. § 1361. Plaintiff has asserted these claims pursuant to the Mandamus Act because FACA does not contain a private right of action, *cf. Freedom Watch, Inc.*, 807 F. Supp. 2d at 33-34, and because the APA applies to agencies, not to the President, *Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 98–99 (D.D.C. 2016) ("The President of the United States is not an 'agency' under the APA." (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992))). The Mandamus Act grants original jurisdiction to district courts "of any action in the nature of

---

[2] Nor does Plaintiff's claim fit into the "narrow exception" to mootness for claims "capable of repetition, yet evading review." *See, e.g., Bois v. Marsh*, 801 F.2d 462, 466 (D.C. Cir. 1986); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009). To qualify for this exception to mootness, a plaintiff must demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Clarke*, 915 F.2d at 704. Plaintiff cannot demonstrate that any future infrastructure advisory committee, in the unlikely event it were to be established, would be "by *its very nature short in duration*, so that it could not, or probably would not, be able to be adjudicated while fully live." *LaRouche v. Fowler*, 152 F.3d 974, 978 (D.C. Cir.1998) (quoting *Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C. Cir. 1985)) (internal quotation omitted). Indeed, under Executive Order 13805, the anticipated infrastructure advisory council would have continued its operations at least until sixty days after submitting its report or December 31, 2018, whichever was earliest, and might have been extended beyond that date. E.O. 13805 § 7. Nor is there any reasonable expectation that any future infrastructure advisory council would operate in violation of FACA. *See id.* § 5(d).

mandamus to compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, such jurisdiction is "strictly confined." *In re Cheney*, 406 F.3d at 729. Indeed, "mandamus is 'drastic'; it is available only in 'extraordinary situations'; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a 'clear and indisputable' right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *Id.*

Under the Mandamus Act, a plaintiff must show that the defendant "has a clear obligation to perform a duty," that "the plaintiff has a clear right to relief," and that "there is no other adequate remedy available." *Freedom Watch*, 807 F. Supp. 2d at 34. The D.C. Circuit has recognized that, "[i]f there is no clear and compelling duty under the statute as interpreted, the district court must dismiss the action. To this extent, mandamus jurisdiction under § 1361 merges with the merits[.]" *Id.* (quoting *In re Cheney*, 406 F.3d at 729). In *In re Cheney*, the plaintiffs sought to obtain documents relating to the National Energy Policy Development Group ("NEPDG") established by President Bush on the basis that NEPDG was an advisory committee subject to FACA, but the government submitted a declaration explaining that the NEPDG was composed solely of federal employees and thus fell outside FACA's definition of "advisory committee." *See id.* at 730. In light of this evidence, the court held that the plaintiffs failed to show "a clear and indisputable right" under FACA "to have the government perform a duty owed to them" and accordingly held that the plaintiffs' claims should be dismissed. *Id.*

Here, Plaintiff similarly fails to establish a clear and indisputable right to mandamus relief from the President. Count One of Plaintiff's Complaint appears to seek declaratory relief in connection with FACA's requirement that a charter be filed before an advisory committee "meet or take any action." 5 U.S.C. app. 2 § 9(c). However, as explained above, Plaintiff fails to set

forth plausible allegations that the alleged Infrastructure Council ever had a meeting or took any

action, so as to trigger the charter requirement. *See* Cordish Decl. ¶¶ 6, 8 (explaining that it was

anticipated that a charter would be filed before the infrastructure advisory council that was

authorized by Executive Order 13805 began operating as an advisory council, but that the charter

had not been finalized when the President decided not to move forward with the council);

Uthmeier Decl. ¶¶ 5, 8 (stating that Department of Commerce staff had been involved in the

process of preparing a charter for the council but no charter had been filed at the time the

President decided not to move forward). In addition, under Executive Order 13805, even if an

obligation to file a charter had arisen, and Plaintiff had claimed that it was owed such a duty, this

obligation would not belong to the President because the Executive Order delegated such duties

to the Secretary of Commerce. *See* E.O. 13805 § 5(d). Plaintiff therefore fails to establish

mandamus jurisdiction with respect to Count One.

      Plaintiff similarly fails to establish mandamus jurisdiction with respect to Count Three.

Count Three alleges that the President has failed to require the alleged Infrastructure Council to

be "fairly balanced" pursuant to 5 U.S.C. app. 2 § 5(b)(2), Compl. ¶ 65; failed to carry out the

"openness" requirements for meetings pursuant to 5 U.S.C. app. 2 § 10(a)(1)-(3), Compl. ¶ 66;

failed to create minutes of Infrastructure Council meetings pursuant to 5 U.S.C. app. 2 § 10(c),

Compl. ¶ 67; and failed to make Infrastructure Council records available pursuant to 5 U.S.C.

app. 2 § 10(b), Compl. ¶ 68. However, Plaintiff does not plausibly allege a clear and indisputable

right to any of these supposed requirements vis-a-vis the President. Again, the President

delegated any such obligations to the Secretary of Commerce. *See* E.O. 13805 § 5(d). Moreover,

any efforts to establish a Presidential Advisory Council on Infrastructure ceased as of August 17,

2017, Cordish Decl. ¶ 8; no such council ever was established prior to August 17, 2017, *id.*;

Uthmeier Decl. ¶¶ 8-9, and the Executive Order authorizing the establishment of such a council has now been revoked, E.O. 13811 § 3. Plaintiff again fails to establish a clear and indisputable right to mandamus relief from the President. Counts One and Three, asserting claims against the President under the Mandamus Act, therefore should be dismissed for lack of jurisdiction.

## V.     PLAINTIFF FAILS TO IDENTIFY A FINAL AGENCY ACTION THAT COULD GIVE RISE TO ITS APA CLAIMS

In addition to its Mandamus Act claims against the President, Plaintiff asserts claims against the Departments of Transportation and Commerce under the APA. *See* Compl. (Counts Two and Four). Like Count One, Count Two alleges that an "Infrastructure Council" has been operating ultra vires without a charter, but this time asserts this claim against the agencies rather than the President. Count Four does the same with respect to Count Three. However, neither Count Two nor Count Four states a claim under the APA upon which relief can be granted. The cause of action set forth in the APA allows a court to "hold unlawful and set aside" agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A). However, this cause of action is only available against a federal agency when the plaintiff has identified a "final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

Here, Plaintiff invokes the APA for its claims against the agencies because FACA contains no private right of action. However, Plaintiff fails to identify a predicate "final agency action" that it asks the Court to hold unlawful or set aside. The Supreme Court has explained that the term "agency action" in § 704 is limited to the administrative activities specified in 5 U.S.C. § 551(13), which defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Norton v. SUWA*, 542 U.S. 55, 62 (2004); *see also La Jolla Friends of the Seals v. NOAA*, 630 F. Supp. 2d 1222, 1229-30 (S.D. Cal. 2009). Moreover, in order for an agency action to be "final," it "must mark

the 'consummation' of the agency's decision-making process" and must also be an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Food & Water Watch v. U.S. EPA*, 5 F. Supp. 3d 62, 81 (D.D.C. 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Neither Count Two nor Count Four purports to challenge any agency action at all, much less a "final" one, nor does Plaintiff's Complaint anywhere identify a final agency action that was plausibly based on the advice or recommendation of an infrastructure advisory council. In particular, Count Two appears to challenge the failure to file a charter for the alleged Infrastructure Council. To the extent such a charter is required under FACA, Executive Order 13805 appears to delegate any obligation to file the charter to the Department of Commerce. E.O. 13805 § 5(d). However, the filing of a charter for an advisory committee is in no way equivalent to an agency rule, order, license, sanction, or relief and thus does not qualify as an "agency action" under 5 U.S.C. §§ 551(13) or 704. Nor would a charter confer any rights, obligations, or legal consequences on Plaintiff, so as to qualify as "final" under *Bennett*. The failure to file a charter therefore would also not qualify as a final agency action. Count Four similarly fails to identify any agency action that could subject the Departments to an APA claim.

Plaintiff's APA claims against the Department of Transportation are particularly implausible because, even while Executive Order 13805 was in effect, the Department of Transportation had no role in the administration of an infrastructure advisory council. *See* E.O. 13805 §§ 2, 5 (indicating that the anticipated council would be in the Department of Commerce). Plaintiff asserts that the Department of Transportation has made certain decisions, but it does not assert that any of these decisions were based on the advice or recommendation of an infrastructure advisory council. Indeed, Plaintiff alleges that these decisions were made by

government personnel only—the Department of Transportation and the President.  *See* Compl.

¶ 24. Counts Two and Four therefore are also subject to dismissal for failure to state a claim.

## VI.     PLAINTIFF'S CLAIM UNDER THE DJA MUST ALSO BE DISMISSED

Because Counts One through Four are subject to dismissal for lack of subject matter

jurisdiction and failure to state a claim upon which relief can be granted, Count Five, asserting a

claim under the DJA, must be dismissed as well. The DJA "is not an independent source of

federal jurisdiction." *C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.,* 310 F.3d 197,

201 (D.C. Cir. 2002). Rather, the Supreme Court has recognized that the DJA is "procedural

only," *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950) (quoting *Aetna Life*

*Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240 (1937)), and "presupposes the

existence of a judicially remediable right," *Schilling v. Rogers,* 363 U.S. 666, 677 (1960). In

other words, in order to seek relief under the DJA, a plaintiff must identify an independent

private right of action through which a "'judicially remediable right' already exists." *Seized*

*Prop. Recovery, Corp. v. U.S. Customs & Border Prot.*, 502 F. Supp. 2d 50, 64 (D.D.C. 2007).

Where such a private right of action is identified, the DJA may provide an additional remedy.

Here, however, because Plaintiff's claims under the Mandamus Act and APA must be dismissed,

its DJA claim is foreclosed. *Schilling*, 363 U.S. at 677; *see also Superior Fibre Prod., Inc. v.*

*U.S. Dep't of the Treasury*, 156 F. Supp. 3d 54, 62–63 (D.D.C. 2016) (recognizing DJA claim

must be dismissed where plaintiffs had not otherwise alleged a cognizable cause of action).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this

action with prejudice.

Dated:  October 16, 2017                              Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General
JESSIE K. LIU
United States Attorney
MARCIA BERMAN
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW Room 7124
Washington, D.C. 20530
Tel.: (202) 616-8475
Fax: (202) 616-8470
Email: kathryn.wyer@usdoj.gov

*Attorneys for Defendants*