```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
--------------------------------------------X

FOOD and WATER WATCH,

                         Plaintiff

                v.              Civil Action  17-1485

DONALD J. TRUMP,

                     Defendant

-----------------------------X
                                   Washington, D.C
                              Wednesday, June 6, 2018
                                    2:50 P.M.


                    TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
                  UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:        Karianne Melissa Jones, Esq.
                      Javier M. Guzman, Esq.
                      Robin Frances Thurston, Esq.
                      DEMOCRACY FORWARD FOUNDATION
                      P.O. Box 34553
                      Washington, DC 20043
                      (202) 448-9090

For the Defendant: Kathryn L. Wyer, Esq.
                      U.S. DEPARTMENT OF JUSTICE
                      Civil Division
                      20 Massachusetts Avenue, NW
                      Washington, DC 20001
                      (202) 616-8475




Court Reporter:    Lisa Walker Griffith, RPR
                      U.S. District Courthouse, Room 6507
                      Washington, D.C.  20001
                      (202) 354-3247
```

**P R O C E E D I N G S**

1

2          THE DEPUTY CLERK:  This is Civil Action 17-1485.

3     Food and Water Watch versus Donald J. Trump.

4          Counsel, please approach the podium and identify

5     yourselves for the record.

6          MS. JONES:  Karianne Jones on behalf of

7     plaintiff, Food and Water Watch.

8          THE COURT:  And with you at counsel's table?

9          MS. JONES:  Javier Guzman and Robin Thurston.

10          THE COURT:  Good afternoon.

11          MS. WYER:  Good afternoon, Kathryn Wyer for the

12     defendant.

13          THE COURT:  Good afternoon.  We're here on the

14     issue of 12(b)1 discovery.

15          I think there was a slight misunderstanding of

16     the Court's order.  I was willing to consider a limited,

17     very targeted discovery to determine whether or not a

18     de fact to infrastructure counsel existed in the early

19     months of 2017.  And it was to be a total of eight

20     questions.  And I have never seen definitions of words like

21     "meeting" or "communication."

22          I read the case law to allow something

23     extraordinarily limited.  The D.C. Circuit on remand

24     basically said you needed the ability to vote or veto.  The

25     Supreme Court cautioned against getting into communications

1   and worrying about privileges.  And the requests that were

2   made in the Cheney case were considered to be outrageous.

3   I don't see the difference between the requests in Cheney

4   and the ones here.

5          So I can't allow them the way they are.  I was

6   getting kind of tired.  So I wrote my own.  I will give it

7   to you both and you can tell me what you think.

8          The point here is not to give you the ultimate,

9   what you would win if you won the FACA case.  The question

10  here is whether there is something that resembles a de

11  facto FACA Committee.  That's the only issue.

12         I think based on what you have so far you have an

13  uphill battle here.  You don't agree with me but I'm the

14  one that is going to have the final word here.  So this is

15  your opportunity to find out if a committee or a FACA

16  Committee existed de facto or otherwise.

17         But it struck me that Mandamus, based on those

18  three cases, Cheney is a really tough case to make, period,

19  against the president.  And you can't make an APA against

20  the president.  So they're very hesitant.  And you

21  certainly can't get into communications.

22         So we tried to draft up something which I think

23  is limited and targeted and what I had in mind.  If you

24  read Justice Stevens, in his concurrence about what he

25  thinks is appropriate, it's quite different than what you

1   folks propounded here.

2          Please give them a copy.  Let's see if we can't

3   live with this.

4          Mind you, the government, had they never filed

5   these declarations or affidavits, we probably wouldn't be

6   here.  But you did and I've read them; so I care about

7   them.

8          (Counsel read the document.)

9          THE COURT:  Let me start with the government.

10         Are you still reading?

11         MS. WYER:  Your Honor, I think most of these are

12   fine.  The only change we would propose is that, in the

13   first one where it says, "in which recommendations or

14   advice was proposed," we think it is important to limit

15   that to "recommendations or advice as a group" because we

16   know that there were a lot of discussions regarding

17   infrastructure where people met as individuals but those

18   would not be relevant to the question of whether there was

19   counsel.  It would be very burdensome to try to identify

20   every instance when someone was talking about

21   infrastructure as an individual.

22         THE COURT:  We could say "was proposed by more

23   than one non government individual."

24         MS. WYER:  Or as a group.  I mean, to mirror the

25   FACA requirements or the definition of committee as it's

1  developed in FACA, we could just say "as a group" because

2  that's what the FACA standard is.

3       THE COURT:  I don't know what a group means.  Are

4  two non government participants a group?

5       MS. WYER:  I think it would depend on -- I think

6  you have to look at the structure, whether there is a fixed

7  membership, if it was like one instance where two people

8  agreed with each other, maybe it would not be a group.  Two

9  people at one time is not very indicative of a group.

10      THE COURT:  I know that.  But the group is -- you

11  are not giving me any definition of a group.

12      It means more than one -- occur involving non

13  government individuals.  So it has to be more than one.

14  And government employees -- or only non governmental

15  individuals.  So if it is two or more.

16      MS. WYER:  But as it is written, it could be, if

17  they each gave independent advice, and not giving advice as

18  a group.  As a group advice means that the group, how ever

19  many it is, has to have come to a consensus in advance, and

20  made their recommendation or advice as a group.

21      THE COURT:  Okay.  We'll hear from the other

22  side.

23      Anything else?  Going down one through seven.

24      MS. WYER:  We didn't see anything problematic

25  there.

1          THE COURT:  Sorry?

2          MS. WYER:  The rest of it seems fine.

3          THE COURT:  Okay.  The confusion that you have

4    put into the case has to do with the preliminary

5    discussions frankly.  It makes it sounds like -- you have

6    to explain what those words mean.  That's what I mean by

7    number five and whether we're talking about people getting

8    together and discussing what is going to happen down the

9    road or are they discussing who is going to be in this or

10   when they're going to meet?  That's one thing.  Are they

11   actually discussing proposals that are going to be made and

12   discussed at a meeting?  Once you opened up that can of

13   worms, you put yourself out there for purposes of asking.

14   That's what I'm getting at in five, six and seven.

15          Okay, let's hear from the other side.  This is

16   not what you asked for, but I am rejecting that out of hand

17   for many good reasons, starting with the Supreme Court.

18          MS. JONES:  Thank you, Your Honor.  I think we

19   would have a couple of additions we would want to make.  In

20   the first interrogatory, we would ask to add "was proposed

21   or solicited."  I don't think that an advisory committee

22   meeting is dependent upon advice being actually given but

23   rather that the government is seeking out advice as a

24   group.  So adding "or solicited" would account for that.

25          THE COURT:  What do you say about this group?

1          MS. JONES:  We agree that advice, it does have to

2  come from a group.  But a group can be two of the four

3  individuals.  Certainly we don't think that all four

4  individuals have to be present at a meeting to make it an

5  advisory committee meeting.  We know of no Court to have

6  ever required 100 percent attendance of council members to

7  make a meeting, an advisory committee meeting.  We think

8  that even one person could be reporting advice on behalf of

9  the group.

10          THE COURT:  I don't disagree with that, if

11  they're speaking on behalf of a group.  So we have to get

12  that in here.

13          MS. JONES:  But I do think that, as long as there

14  are two non governmental employees -- individuals, excuse

15  me, present and offering their advice together either

16  through the voice of one or through the voice of both, that

17  that would suffice to account for FACA purposes.

18          THE COURT:  Can we say "was proposed by a group"

19  or "solicited from a group?"  The group can include both

20  government and non government.

21          MS. JONES:  I think that's correct, yes.

22          THE COURT:  But it has to be solicited from a

23  group at least two non governmental individuals because you

24  can't have it coming from one; otherwise, it would be an

25  individual sort of point of view.

1          MS. JONES:  I think that's right.  I think we

2     would be -- we would really want to include advice that

3     comes from two people, if not three or four.

4          THE COURT:  Two or more.

5          MS. JONES:  Two or more, that's correct.

6          THE COURT:  All right.  Anything else?

7          MS. JONES:  Yes, Your Honor.  On number four, I

8     think we would be fine with limiting this to a vote or veto

9     power.  But we again don't necessarily think that has to

10    have been exercised.  So we would like to account for that

11    in the interrogatory.  Something to the effect of giving a

12    non governmental individual, have the power to vote or veto

13    any recommendation or draft any portion of the final or

14    preliminary committee report.

15         THE COURT:  Is that all right with you, Ms. Wyer?

16    Did any non governmental individual have the power to vote

17    or veto any recommendation.

18         MS. WYER:  That's fine.

19         THE COURT:  I wrote "in fact voted."  Counsel's

20    point of view is "had the power to."  This, according to

21    Judge Randolph, who is speaking for an en banc court, says

22    it's key.  But what is wrong with three?

23         MS. JONES:  Your Honor --

24         THE COURT:  I already covered it.

25         MS. JONES:  I think that's correct.

1        THE COURT:  We'll leave three and four the same.

2    Thank you.

3        MS. JONES:  Yes.  Our only other request would be

4    on number six.  We would ask that we solicit

5    recommendation, advice, report, drafted, proposed or issued

6    as a result of the preliminary discussion or other meetings

7    as accounted for in question one.

8        THE COURT:  I thought that was the first

9    question.  It was meant to be.  Recommended or advice.

10        MS. JONES:  My reading of the first question,

11    especially with the addition of the or solicited language

12    is it is merely accounting for the number of meetings that

13    were occurring between at least two individuals or between

14    non government and government employees about

15    infrastructure.  My suggestion would be on number six to

16    ask specifically whether recommendation, advice or reports

17    were proposed or issued as a result of those.

18        THE COURT:  I think I would break it out to

19    another question.  So I think that I'd add a question after

20    four, in other words, we call it five.  Was any

21    recommendation, advice or report drafted, proposed or

22    issued as a result of these meetings.  Then have number

23    five become six and six become seven.  And seven would be

24    left alone.

25        Did the government follow what we just did?  I'm

1    leaving six, seven and eight the same.  I renumbered them,

2    in other words. So five becomes six, six becomes seven,

3    seven becomes eight.  Number five is going to read: Was any

4    recommendation, advice or report drafted, proposed or

5    issued as a result of these meetings.  So five refers to up

6    to one.  And seven refers to six, talking about preliminary

7    discussions.

8              MS. WYER:  I would think it should be: Was any

9    recommendation, report or advice drafted by the group

10   again.

11             THE COURT:  I think that's fine.  The same thing

12   will appear in five.  Moving from the bottom up, seven

13   remains the same but it is renumbered eight.  Number seven,

14   which was six: Was any recommendation, advice or report

15   drafted, proposed or issued by the group as a result of

16   these preliminary discussions.  Number five is renumbered

17   six and it remains the same.  Then we are adding a five,

18   which will be: Was any recommendation, advice or report

19   drafted, proposed or issued by the group as a result of

20   these meetings.

21             Four remains the same.  Three and two remain the

22   same.  Number one has been rewritten to read, third line:

23   Infrastructure policy was proposed by a group of two or

24   more non governmental individuals.  I should say by a

25   group, including two or more.  Okay?  By a group including

1    two or more individuals or solicited from a group including

2    two or more non governmental individuals for the president,

3    Secretary Chao, or persons in the White House, Office of

4    American Innovation or Department of Transportation.

5             Now I suggest that you issue one of these to the

6    Department of Transportation and one to the Office of the

7    President, whatever.  And you'll get eight questions times

8    two.

9             Is the government following these?  I can retype

10   this.

11            MS. JONES:  Yes, Your Honor.  If you would be

12   able to retype them, that would be great.  Thank you.

13            THE COURT:  Ms. Wyer, who should these be

14   addressed to?  Can you do one set to the Office of the

15   President and one set to the Department of Transportation?

16   They will be the same exact questions.

17            MS. WYER:  Your Honor, could we have five minutes

18   to discuss this?

19            THE COURT:  Fine.  We will retype it in the

20   meantime.

21            We'll take a 10 minute recess.

22            (A brief recess was taken.)

23            THE COURT:  We'll hear from Ms. Wyer.

24            Who is with you at counsel table please?

25            MS. WYER:  This is Marcia Berman from the DOJ

1    with me at counsel table.

2              THE COURT:  Good afternoon.

3              Go ahead.

4              MS. WYER:  Your Honor, just in regards to number

5    one, this is just worded very broadly such that, for

6    example, any meeting where a trade association was involved

7    or that kind of group would be covered, it would be -- and

8    you also have to keep in mind that we're dealing with the

9    Department of Transportation which is an agency that

10   focuses on infrastructure.

11             So I think we have to somehow word it so that it

12   excludes meetings by DOT employees with a trade association

13   or something like that because that's not really what we're

14   trying to get at here.  So I think I would--

15             THE COURT:  We have four individuals.  We could

16   put them down there as a footnote.

17             MS. WYER:  That's exactly what we were thinking.

18   We were thinking of putting them in the interrogatory, just

19   like the plaintiffs had proposed in their proposed

20   interrogatories.  So it would say something like in which

21   group recommendations or advice regarding infrastructure

22   policy was proposed by or solicited from a group, including

23   at least two of the four individuals: Lefrak, Roth, Harris

24   or Ford.

25             THE COURT:  The other way we could do it is the

1    non-government -- you would drop a footnote in the second

2    line where you say "non government individuals" and have a

3    footnote listing the four people.

4            MS. WYER:   And specifying that we're talking

5    about meetings involving at least two of those four?

6            THE COURT:  Once we've defined non government

7    individuals I'm assuming that that is what -- We would just

8    say: non government officials are defined to be A. B. C.

9    and D. and that would carry over whenever we talk about non

10   government officials.

11           Is the plaintiff okay with that?

12           The first line would read, "-- occur involving

13   non government individuals."  Footnote One: The non

14   government individuals are defined throughout as -- I don't

15   know their four names.  Okay?

16           MS. JONES:  Yes, Your Honor.  We would be fine

17   with that.

18           THE COURT:  Okay.  The names I think are Richard

19   Lefrak, Steven Roth, Joshua Harris, and or Bill Ford.  So

20   that would be our footnote.  Anything else you have?

21           MS. WYER:  And we would still ask that "group" be

22   inserted before "recommendations in which group

23   recommendations or advice" because otherwise you could

24   solicit advice from a group.  That doesn't necessarily mean

25   that you are soliciting group advice because you could be

1    soliciting individual advice from a group of people.

2              THE COURT:  Well, we could say "proposed by a

3    group in which recommendations or advice regarding

4    infrastructure policy was proposed by a group or solicited

5    from a group including two or more."

6              MS. WYER:  Just to clarify that we're only

7    talking about group advice being solicited.  That the

8    advice being solicited would be from the group and not

9    individual advice.

10             THE COURT:  That's what it said, "solicited from

11   a group."  Now you are worrying about the recommendations

12   regarding policy was proposed by a group including two or

13   more.

14             I guess the way we ought to do it is "proposed or

15   solicited by --"  No, it has to be "from."  You want the

16   words "proposed by" to include "from a group including two

17   or more non government individuals."

18             MS. WYER:  I was more thinking that "solicited"

19   could be ambiguous in that way because solicited from a

20   group--

21             THE COURT:  I'm messing what you're saying.

22             MS. WYER:  As long as we understand that we're

23   talking about recommendations or advice that is of the

24   group and not individual recommendation or advice.

25             THE COURT:  It should be that "proposed by a

1   group" or "solicited from a group."  Is that understood?

2              MS. WYER:  I think that we're -- I think based on

3   this discussion, I'm understanding that that is what you

4   mean.

5              THE COURT:  Right.

6              Does the plaintiff understand that, too?  In

7   other words, it is not proposed by an individual.  It is

8   either proposed by or solicited from a group.  But from a

9   group or a group modifies "proposed by" as well as

10  "solicited from," instead of repeating it twice.

11             It can't be recommendations by an individual.  It

12  has to be by a group.

13             MS. JONES:  Yes, Your Honor.  The only thing we

14  would request is it be proposed by or on behalf of a group.

15             THE COURT:  I'm not worried about that.  So it is

16  going to read "proposed by or on behalf of, or solicited

17  from."  So if we put a comma after "of" and "solicited

18  from" comma, then: a group including two or more non

19  government individuals for the President, Secretary,

20  Persons -- How is that?

21             MS. WYER:  Then the only other complication is

22  especially with regard to DOT, if we're saying any DOT

23  employee would potentially be covered here, it would be

24  just very burdensome for DOT to look through the records of

25  every single DOT employee for this kind of information.

1          So the DOT thinks if there were any meetings

2     involving any of these four individuals, it would be the

3     secretary or deputy secretary that would have had those

4     meetings.  So we wonder if it could be limited to that.

5          THE COURT:  Does the plaintiff have any thoughts

6     on this?

7          MS. JONES:  Yes, Your Honor.  We would not want

8     to include that limitation in the interrogatory.  Our

9     position is that the government would be able to determine

10    which officials were most likely to have met with any of

11    these four individuals, most likely is going to be high

12    level officials and not low level staff.  So it, itself, is

13    limited as it is.  So I don't know that we would want to

14    limit it even further.

15         THE COURT:  Political appointees?

16         MS. JONES:  Political appointees and their staff.

17         THE COURT:  How is that?  This is pretty early.

18         MS. WYER:  We think that's fine, just as long as

19    it's understood that, in responding to the interrogatory,

20    DOT is going to exercise its understanding of who the

21    people are, who would most likely have the information.

22         THE COURT:  Well, it is going say Department of

23    Transportation, political appointees or their staff.  That

24    is pretty -- it has to be the people who are political

25    appointees or have a staff in the first six months or seven

1    months.

2              MS. WYER:  I don't know the structure of DOT.  I

3    know in Department of Justice, there are a fair number of

4    political appointees.  It may be that not all of them would

5    be likely to have had meetings with these individuals.  So

6    I think DOT still may exercise its discretion in figuring

7    out who exactly would be likely to have those meetings.

8              THE COURT:  Yeah.  I don't know how many people

9    there are.  Is there anybody here who knows that from DOT?

10             MS. WYER:  Political appointees and their staff

11   would apparently be a lot of people.

12             SPEAKER 3:  Joy Park for the Department of

13   Transportation.

14             It is hard for me to give an exact number but to

15   give you a general idea of structure of the Department of

16   Transportation, we have operating administrations that

17   essentially are a mode of transportation.  So for example,

18   the Federal Transit Administration has many political

19   appointees within the office but it is highly unlikely that

20   anyone from the Federal Transit Administration would have

21   had any involvement in the Infrastructure Council.

22             THE COURT:  Who would?  You say there are three

23   departments or three something?

24             MS. WYER:  I think that what the Department of

25   Transportation has conveyed to me is that it is their front

1    office and in particular the secretary and deputy secretary

2    that they think, if there had been meetings, those would be

3    the individuals who would have been involved.

4              THE COURT:  Is that one deputy secretary or more?

5              SPEAKER 3:  There is currently one deputy

6    secretary that is a political appointee.  There is also an

7    undersecretary who is also a political appointee.  And many

8    of their staff are also political appointees.

9              THE COURT:  Give me a definition here.  We've

10   talked about the secretary.  So who else would be more than

11   likely?  If you are getting a FOIA request, somebody goes

12   and figures this out.

13             MS. WYER:  I think they are of the firm opinion

14   that it would really only possibly be the secretary or

15   deputy secretary who would have had such meetings.

16             THE COURT:  What about the undersecretary?

17             MS. WYER:  Apparently they don't think so.  But

18   again, as long as it is understood that, when responding to

19   the interrogatory, that that judgment would be made of

20   whose records to search in order to provide a response.

21             THE COURT:  Okay.

22             Does the plaintiff have any helpful suggestions

23   here?  I could say individuals for the President, Secretary

24   Chao, the Deputy Secretary, or persons from the White House

25   or the Office of American Innovation.

1     MS. WYER:  Your Honor, I think we would prefer to

2     leave it with political appointees and their staff, with

3     the understanding that DOT would use its judgment to best

4     determine who would have these meetings.  But I think it

5     might extend beyond just the Secretary and Deputy

6     Secretary.  For example, there was a presidential

7     memorandum on air traffic control issues that summer.  So

8     FAA may have been involved in these meetings.  I think that

9     leaving it at political appointees with the understanding

10    that DOT will do it best to determine who would have been

11    at these meetings.

12    THE COURT:  You've got your discretion there.

13    Political appointees or their staff at DOT.

14    MS. JONES:  We would also like to clarify that

15    political appointees would include acting officials.  Given

16    that it was early in the administration, that might be the

17    case.

18    THE COURT:  Is that political appointees include

19    acting staff?

20    MS. WYER:  I think we would understand it could

21    include acting.

22    THE COURT:  All right.  They understand it to be

23    acting.

24    It reads now:  Secretary Chao, the Deputy

25    Secretary, or persons from the White House, the Office of

1    American Innovation or the political appointees or their

2    staff at DOT .  That is with the understanding that the

3    attorneys will have discretion to determine who is most

4    likely to have this kind of material.

5            Since you take the position these meetings never

6    occurred and there was no such committee, I don't know how

7    we can spend so much time on defining what never happened.

8    I feel like I'm in the world of Alice in Wonderland.

9            MS. WYER:  That's what makes it so hard because

10   you are searching for something that probably does not

11   exist.

12           THE COURT:  But you filed affidavits to say so.

13           MS. WYER:  Just one other thing on number seven,

14   Your Honor, was any "recommendation, advice or report," we

15   would insert "infrastructure policy."

16           THE COURT:  That's fine.  All of this has to be

17   infrastructure policy.

18           MS. WYER:  And number five also.

19           THE COURT:  Okay.  Do we need it anywhere else?

20           MS. WYER:  Number three and number four also

21   have--

22           THE COURT:  They refer back to number one, if so.

23   Okay.  I think I've exhausted our ability.

24           Okay.  We will -- I guess the easiest thing is

25   just send this to you as a PDF.  And we would expect that

1    the government would respond.

2              Sorry?

3              MS. JONES:  Your Honor, we have a couple of

4    points we would like to address as well.

5              THE COURT:  Okay.

6              MS. JONES:  Thank you, Your Honor.  I'll be

7    quick.

8              The first question we have is whether, to what

9    extent the definitions we proposed in our interrogatories

10   are being adopted here.  We do think it would be important

11   to set definitions for a few words including "meetings,

12   recommendation or advice" and for "infrastructure policy."

13             THE COURT:  Your definitions like -- they ate up

14   the whole interrogatory.

15             MS. JONES:  I think our definition of "meeting"

16   was fairly straightforward.

17             THE COURT:  Yeah, you wanted the topics and what

18   was discussed and all of this.

19             MS. JONES:  That was included in the definition

20   of "identify."  The meeting itself was just a discussion

21   whether in person, by telephone, video or other means in

22   which any of the persons identified in the particular

23   interrogatory attended or participated for any part

24   thereof.  Definition number seven on page three.

25             THE COURT:  Hold on.

1          I can live with that.  Seven, meeting.  Okay.

2   What's next?

3          MS. JONES:  Infrastructure policy.  That we

4   define, page two at number five, the term infrastructure

5   policy means any contemplated, proposed, potential or

6   adopted plan or action by defendants with respect to

7   infrastructure.

8          THE COURT:  Is that okay?

9          MS. WYER:  I think infrastructure policy is

10  pretty self explanatory.  I don't know why we need to talk

11  about contemplated or potential policy, plan or action.  I

12  think we understand what infrastructure policy means for

13  purposes of--

14         THE COURT:  This doesn't really define it.  We

15  talk about infrastructure policy was proposed by or on

16  behalf of, or solicited from.  But infrastructure policy

17  really gets into the next definition.

18         MS. JONES:  Also definition number four as well.

19         THE COURT:  Yeah, number four.  Do you need that

20  to tell you what the -- that's the definition, not number

21  five.  Number four, do you need that or do you know what

22  infrastructure means?

23         MS. WYER:  I think we know what infrastructure

24  means.

25         THE COURT:  Can you equate it with number four in

1    case you have any ambiguities?  Tunnels, pipelines,

2    waterways, waste water systems, power grids, broadband

3    networks and large scale developments, et cetera,

4    resiliency and -- who writes these things?

5              MS. WYER:  I'm not sure I know what that means,

6    Your Honor.

7              THE COURT:  I don't either but do your best.  If

8    you need help defining the infrastructure or meeting,

9    they're here on number four, number seven.

10             Anything else?

11             MS. JONES:  Yes, Your Honor.  I think we would

12   want the definition of "recommendations or advice."

13             THE COURT:  Where is that?

14             MS. JONES:  We had not proposed one.  We did not

15   use those terms in our interrogatories.

16             THE COURT:  We can live without it.  I don't

17   think that's what is going to kill us.  We will send this

18   to you by PDF.  We are incorporating by reference --

19             MS. JONES:  Your Honor, we do have one more

20   point, if I may.

21             THE COURT:  Okay.

22             MS. JONES:  Although we agreed to these

23   interrogatories as revised by Your Honor, we would like to

24   make clear that we're not conceding today that any of the

25   answers would necessarily be -- or that we would need to

1    prove each and every interrogatory, and that that would be

2    the test for determining whether a de facto advisory

3    committee existed.

4            Particularly to the vote and veto point, we would

5    just want to, at a point down the road, be able to brief to

6    this Court that vote or veto is not actually the test for

7    advisory committee.

8            THE COURT:  You mean the en banc decision is not

9    correct?

10           MS. JONES:  We would just like the opportunity to

11   reserve our right to brief that to the Court.

12           THE COURT:  Right.  I'm not saying that

13   necessarily, depending on the answers, that that's the end

14   of ball game.

15           MS. JONES:  That's all we wanted to make clear,

16   Your Honor.

17           THE COURT:  You'll have the chance after we get

18   the answers I suppose to revisit whether or not you would

19   be one jurisdiction here.  So, yes.  Okay.

20           So you get these out to the government, or

21   they're going to the government by tomorrow.

22           How long is it going to take you to respond to

23   this?

24           Then I think you should renew your motion.

25           MS. WYER:  Well, would we file a supplemental

1    brief addressing the information you're suggesting?

2            THE COURT:  Yeah.  I mean, you wouldn't have to

3    file anything if you don't want to, other than to attach

4    the answers.  I need to see the answers it seems to me.  So

5    you can supplement your brief by saying here is the reason

6    why they haven't satisfied their burden because--.  And I'm

7    not getting into depositions or document requests.  This is

8    it.

9            So at that point, they're going to tell you why

10   or why not they have jurisdiction I guess.  They have the

11   burden at that point.  I can't see any other way to do

12   this.  I mean, you obviously don't have to repeat yourself.

13   I wouldn't want you to.  You can file a supplement saying

14   we have responded to these requests.  It shows why the

15   Court has no jurisdiction under (b)1.

16           MS. WYER:  That's fine.

17           THE COURT:  I don't know what they're going to

18   argue.  I mean, I've gone through the cases.  I've taken

19   out anything I can get from the cases that are proper

20   questions, and they are on this piece of paper.

21           So, how long before you can succeed in doing

22   this?  I suggest you answer the questions now that I've

23   spent all this time writing them.

24           MS. WYER:  I would ask, given that we would be

25   submitting a supplemental filing, I would -- I have out of

1   town hearing on July 9.  So I would ask that we put it on

2   July 19th.

3          THE COURT:  I don't really think you are going to

4   have to file another big brief.

5          MS. WYER:  I think I may be out of the office the

6   entire week of the 9th.  Before that, I have a lot of

7   deadlines.

8          THE COURT:  All right.  Then you file on the

9   17th.  They have 30 days to respond.  I don't know why you

10  need 30 days.  There is going to be such a reason to

11  believe there was a de fact to committee or there wasn't.

12  There are some skeptics on the D.C. Circuit on the notion

13  of de fact to anyway.  So you will respond to these

14  questions by the 6th of July.  And then file by the 9th or

15  16th.

16         MS. WYER:  I'm not sure I could do the 6th.  I

17  would just ask that we put everything on the--

18         THE COURT:  The 16th?  Okay, that's all right.

19  The 16th.  Then the opposition will come by the 10th.  If

20  the government has anything further to say, they can say it

21  by the 17th.

22         Okay.  We'll send you a PDF so you can get the

23  final version.  But we've incorporated the definition from

24  number four and from the word "meeting."  I can't remember

25  the number.  Okay?

1          MS. WYER:  Okay.

2          THE COURT:  All right.  Thank you very much.

3          MS. JONES:  Your Honor --

4          THE COURT:  We'll issue a schedule.

5          Yes?

6          MS. JONES:  Your Honor, there was one point that

7     was just brought to my attention.   I apologize.

8          Because we have now changed number one to say "by

9     or on behalf of a group,"  I think that number five and

10    number seven, where there is the word "by" should also be

11    suggested to be "by or on behalf of the group," just to

12    bring them all into accordance.

13         THE COURT:  "By or on behalf of the group."

14    That's fine.  That's okay.  And number seven.

15         MS. JONES:  Yes, Your Honor.

16         THE COURT:  By or on behalf of.

17         MS. JONES:  Thank you.

18         THE COURT:  All right.  It is still like Alice in

19    Wonderland.

20         Thank you.  Have a good day.

21         (Whereupon, at 4:02 p.m., the hearing concluded.)

22

23

24

25

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____          _____
Lisa Walker Griffith, RPR                                    Date